# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

MICHAEL SLATON,                          :

    Plaintiff,                        :
                                  Case No. 3:14cv00341

  vs.                                  :
                                  District Judge Thomas M. Rose

CAROLYN W. COLVIN,                       :   Chief Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,                 :

    Defendant.                        :

---

## REPORT AND RECOMMENDATIONS[1]

---

### I.    Introduction

Plaintiff Michael Slaton brings this case challenging the Social Security Administration's denial of his applications for Disability Insurance Benefits and Supplemental Security Income.  He asserted during his administrative proceedings that he has been under a benefits-qualifying disability – starting on June 6, 2009 – due to injuries he suffered on that day when a car struck him.  He was a pedestrian at the time the car struck him.  He also asserted that his disabilities included bipolar disorder and "mental impairments."  (Doc. #5, *PageID* #344).

Administrative Law Judge (ALJ) Amelia G. Lombardo concluded that despite

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff's impairments, he could perform light work with certain restrictions.  This and other findings led ALJ Lombardo to conclude that Plaintiff could perform jobs that exist in the national economy and, as a result, was not under a benefits-qualifying disability.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), the administrative record (Docs. #5), and the record as a whole.

Plaintiff seeks an Order reversing the ALJ's decision and remanding the matter for payment of benefits.  The Commissioner asks the Court to affirm the ALJ's decision.

## II.  Background

### A.  Plaintiff's Vocational Background and Testimony

Plaintiff was 39 years old when ALJ Lombardo issued her decision, placing him in the category of a "younger person" for purposes of resolving his claims for Disability Insurance Benefits and Supplemental Security Income.  *See* 20 C.F.R. §§ 404.1563(c); 416.963(c).[2]  He has a high-school education.  He worked in the past as a well driller and a welder.

During ALJ Lombardo's hearing, Plaintiff testified that he is unable to work due problems he's had since the car accident, such as comprehension issues, difficulty with his verbal skills, and falling asleep throughout the day.  (Doc. #5, *PageID* #99).  He has problems with his back and has four fractures in his neck.  He stated, "I had a brain

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefit regulations with full knowledge of the corresponding Supplemental Security Income regulations.

concussion, and I had bleeding on the brain." *Id*. at 100.  And he noted he was "very

bipolar." *Id*.  He was not drinking, presumably alcohol, at the time of the ALJ's hearing.

*Id*. at 100.

During a typical day, Plaintiff sits around the house and tries to do what his parents

ask him of him, such as helping his mother with laundry.  *Id*. at 101-02.  He can

concentrate on reading for three to four minutes but then needs to start over.  Although he

tries to read, he cannot read very much.  *Id*. at 103.  His mother is in charge of his

medications.  He has not dispensed his own medications since he was involved in the car

accident.  *Id*.

Plaintiff testified that since the car accident, he falls asleep approximately 10 times

a day for 15 to 20 minutes each time.  *Id*. at 105-06.  His parents help pick out his clothes

for him, and he did not know if he was able to dress without his parents' assistance.  *Id*. at

106.

### B.    Dr. Flexman

In October 2009, psychologist Dr. Flexman consultatively evaluated Plaintiff.

(Doc. #5, *PageID* #722-26).  Plaintiff reported to Dr. Flexman that he has been diagnosed

with bipolar disorder and has been depressed for years.  He finds it hard to maintain

energy, and he worries "about things."  *Id*. at 722.  Dr. Flexman reported, "The Bipolar

Questionnaire was negative," without further explanation.  *Id*.

Plaintiff's affect and mood at the time of Dr. Flexman's evaluation appeared as

follows: "Affect was appropriate and lability was not present. Attitude was within normal limits. He reports emotionally that his mood is all right; he tries to stay okay, one day at a time. He reports that his temper is controlled. Feelings of helplessness, hopelessness and worthlessness were not present. Anhedonic attitude was not present. Poverty of thought was not present. Mood swings were not reported. Grandiosity was not present." *Id* at 724.

Dr. Flexman diagnosed major depression, recurrent, mild; alcohol and polysubstance abuse; and a somatoform disorder. *Id*. at 725. He opined that Plaintiff was mildly impaired in his ability to understand, remember, and carry out short, simple instructions; make judgments for simple work-related decision; sustain attention and concentration; and interact appropriately with supervisors. Dr. Flexman believed Plaintiff had moderate impairments in his ability to interact appropriately with the public and coworkers, respond appropriately to work pressures, and respond to changes in the work environment. *Id*. at 725-26.

### C.    Drs. Nwokoro, Fernandez, Caldwell, and McCloud

In August 2010, Dr. Nwokoro co-signed a letter stating that Plaintiff was currently under his care and the care "of several subspecialties including Psychiatry, Gastroenterology and Pain Management." *Id*. at 829. The letter further states, "He suffers from multiple debilitations and progressive medical co-morbidities that worsened since he sustained a major head injury in 2009...." *Id*. The diagnoses included, in part, bipolar disorder, displacement of lumbar intervertebral disc without myelopathy, cognitive

4

deficits, difficulty walking. *Id*. According to Dr. Nwokoro, Plaintiff's "memory is poor and it is currently deteriorating and we are evaluating this trend. He also has significant weakness to the right side and has a persisting antalgic gait and ataxia – requiring a walking cane for balance." *Id*. Dr. Nwokoro concluded that Plaintiff "is unable to sustain any meaningful employment duties in any capacity at this time." *Id*.

In October 2010, psychologist Dr. Fernandez reviewed the record and concluded that Plaintiff had mild restriction in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation, each of extended duration. *Id*. at 128. Dr. Fernandez assigned weight to Dr. Flexman's statements about Plaintiff's functioning by finding his statements "consistent with the overall MER [medical electronic record]." *Id*. at 133. Dr. Fernandez further wrote, "Opinion of Dr. Nwokoro (2/1/10) that [Plaintiff] cannot sustain any work activity is not adopted due to it being inconsistent with overall evidence, which shows [Plaintiff] capable of higher level of functioning." *Id*.

In October 2010, Dr. Caldwell reviewed the record and noted that all Plaintiff's fractures are well healed. *Id*. at 146. She acknowledged that Plaintiff continues to have "chronic pain in his low back, right leg and right shoulder." *Id*. According to Dr. Caldwell, Plaintiff retained the ability to "perform medium work with postural and manipulative limitations." *Id*. In June 2011, Dr. McCloud examined the record, including

the records provided by Dr. Reddy, and reached the same conclusions as Dr. Caldwell. *Id*. at 165

### D. **Dr. Reddy**

In January 2011, Dr. Reddy completed a Functional Capacity Evaluation, indicating that Plaintiff was seen every four weeks "for medical pain management and medicine modalities and/or injections, as necessary." *Id*. at 558. Plaintiff's diagnoses included bilateral lumbar radiculopathy, traumatic brain injury, multiple rib fractures, pelvic fractures, history of bipolar disorder, and chronic pain. Dr. Reddy identified Plaintiff's symptoms as chronic pain, instability with ambulation, somnolence, fatigue, and depression. Objective signs of Plaintiff's pain included significantly reduced range of motion in his lumbar back, both hips, and both knees; tenderness, crepitus, muscle spasm, and muscle weakness. Other signs were Plaintiff's antalgic and impaired gait. *Id*. at 559. Dr. Reddy believed that emotional factors contribute to the severity of Plaintiff's functional limitations and that his pain is severe. *Id*. at 559-60. His pain levels and other symptoms are severe enough to interfere with his attention and ability to concentrate. *Id*. at 560. Plaintiff takes methadone and percoset that causes him drowsiness and gastric upset, according to Dr. Reddy. *Id*.

Dr. Reddy opined that Plaintiff could continuously sit for one to two hours, and continuously stand for one hour. He must walk for ten minutes every ninety minutes. Dr. Reddy further opined that Plaintiff could sit, stand, and walk for a total of about two hours

each in an eight-hour workday.  As to Plaintiff's lifting ability in a competitive work environment, Dr. Reddy believed that Plaintiff could never lift any amount weight.  *Id*. at 562.  He has limitations in reaching up and down as well as limitations in pushing and pulling.  Dr. Reddy explained that these limitations were due to Plaintiff's chronic right shoulder pain and left shoulder restriction "as well as lumbar pain/pathology [that] prevents repetitive reaching, pushing, and/or pulling."  *Id*.  Dr. Reddy thought that Plaintiff's bilateral lumbar radiculopathy prevents Plaintiff from engaging in repetitive foot movements.  *Id*. at 563.  Dr. Reddy also indicated that Plaintiff's impairments or treatment would, on average, cause him to be absent from work three or more times a month.  *Id*. at 564.  And, Dr. Reddy believed that Plaintiff's functional limitations began, at the earliest, on June 6, 2009 (the date a car struck him).  *Id*.

### E.   Dr. Patwa

Psychiatrist Dr. Patwa initially assessed Plaintiff in January 2010.  *Id*. at 818-20. Plaintiff reported being nervous, anxious, tense, jittery, fidgety, and irritable.  He further indicated feelings of hopelessness, helplessness, worthlessness, and uselessness.  He reported isolation and suicidal ideations.  Dr. Patwa diagnosed Plaintiff with bipolar affective disorder, depression; panic disorder; polysubstance abuse by history, in remission; and personality disorder versus posttraumatic stress disorder.

On several occasions, Dr. Patwa provided information and his opinions about Plaintiff's treatment, health problems, and work limitations.  Dr. Patwa reported in March

2010 that Plaintiff was seen every two weeks for medication management and symptom monitoring.  *Id*. at 1326.  His diagnoses included bipolar disorder, panic disorder, and posttraumatic stress disorder.  His symptoms included poor memory, sleep disturbance, mood disturbance, blunt, flat or inappropriate affect, emotional liability, decreased energy, hostility and irritability, recurrent panic attacks, intrusive recollections of a traumatic experience, generalized persistent anxiety, difficulty concentrating or thinking.  *Id*.  Dr. Patwa believed that Plaintiff was markedly limited in the majority of the mental work activities.  *Id*. at 1347-49.  Dr. Patwa observed that Plaintiff is generally sedated with pain medication when seen.  *Id*. at 1349.  His affect was blunted, and he was slow to respond. Dr. Patwa found that Plaintiff had difficulty focusing, concentrating, and remembering. His thoughts and speech were circumstantial and tangential.  Dr. Patwa noted that Plaintiff's family complained of mood lability and perseveration.

In January 2011, Dr. Patwa wrote a brief letter stating that Plaintiff was currently under his care and suffers from bipolar affective disorder, depression, and panic disorder. According to Dr. Patwa, "Due to [Plaintiff's] current symptoms and functioning levels, I do feel that he is currently unemployable.  *Id*. at 1338.  In June 2012, Dr. Patwa again provided his opinions about Plaintiff's work limitations, which were similar to those he had previously provided in March 2010.  *Id*. at 1478-81.  In February 2013, Dr. Patwa wrote a one-paragraph letter stating that he reviewed his previous (June 2012) assessment of Plaintiff's residual functional capacity and confirmed its ongoing accuracy.  *Id*. at 1732.

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources.  The ALJ and the parties have accurately summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence.  Further description of the medical evidence is therefore duplicative and unnecessary.

### III.　"Disability" Defined and the Administrative Decision

To be eligible for Disability Insurance Benefits or Supplemental Security Income a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§ 423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both programs.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ Lombardo applied the Social Security Administration's five-step sequential evaluation procedure.  *See* 20 C.F.R. § 404.1520(a)(4).  Steps two, three, and four are the most significant in this case.

At step two, the ALJ concluded that Plaintiff had the several impairments of

residual effects of motor vehicle accident (MVA)/multiple fractures, right shoulder acromioclavicular joint (ACJ) injury with degenerative changes, bipolar disorder, and history of substance abuse.  (Doc. #5, *PageID* #61).

At step three, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of Impairments, including Listing sections for major dysfunction of a joint, reconstructive surgery of a major weight-bearing joint, affective disorders and substance addiction disorders.  (Doc. #5, *PageID* #s 62-64).

At step four, the ALJ assessed the most functional activities Plaintiff could do in a work setting despite his impairments, or his residual functional capacity,[3] as follows:

> [Plaintiff] has the residual functional capacity to perform light work ...
> except with only occasional overhead reaching with the right, dominant
> upper extremity and use of a cane to ambulate.  Further, work must be
> unskilled as defined in the Dictionary of Occupational Titles and low stress
> defined as no assembly line production quotas and not fast paced.  Finally,
> work must involve no contact with the general public and only occasional
> contact with coworkers and supervisors.

(Doc. #5, *PageID* #64).  ALJ Lombardo also found that Plaintiff could not perform his past relevant work.

At step five, the ALJ found that Plaintiff could perform unskilled, light exertional jobs and that a substantial number of such jobs exist in the national economy.  This ended the ALJ's evaluation, leading her to conclude, as noted previously, that Plaintiff was not

---

[3] *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

under a benefits-qualifying disability.

**IV.**  **Judicial Review**

The Social Security Administration's determination of disability – here, embodied in ALJ Lombardo's decision – is subject to judicial review along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, substantial evidence supports the ALJ's factual findings when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241; *see Gentry*, 471 F3d at 722.

11

V.    **Discussion**

Plaintiff argues that ALJ Lombardo failed to properly evaluate the medical source opinions and disregarded the opinions from treating physicians, Dr. Reddy, Dr. Patwa, and Dr. Nwokoro.  Plaintiff further argues that the ALJ improperly assigned "great weight" to consulting psychologist, Dr. Flexman, "despite the fact he did not have an accurate history and relied upon a 'test' to determine if bipolar disorder was present;" and gave "some weight" to the opinions of the state agency non-examining physicians, Dr. Caldwell and Dr. McCloud.  (Doc. #6, *PageID* #1754).  Plaintiff also maintains that ALJ Lombardo did not properly develop the record but instead incorrectly focused on Plaintiff's drug abuse when assessing his residual functional capacity.  Lastly, Plaintiff contends that the ALJ erred in finding Plaintiff's allegations are not credible and by not evaluating and crediting the testimony of his father, Raymond Slaton.

The Commissioner contends that substantial evidence supports the ALJ's decision. The Commissioner reasons that the ALJ considered all of Plaintiff's impairments and accommodated them in her assessment of his residual functional capacity.  Plaintiff has failed to show that the assessment of his residual functional capacity is inadequate, according to the Commissioner.  And, the Commissioner maintains that the ALJ posed an accurate hypothetical question to the vocational expert, and Plaintiff has failed to explain why he cannot perform the jobs identified by the vocational expert.

Social security regulations build a hierarchy of medical sources opinions based largely on the type of relationship a medical source has with the applicant for social

12

security. From top to bottom, the regulations characterize medical sources as treating physicians or psychologists, nontreating yet examining physicians or psychologists, and nontreating/record-reviewing physicians or psychologists. *Gayheart v. Comm'r Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). The source of the opinions provided by a physician or psychologist "dictates the process by which the Commissioner accords it weight." *Id.*

Treating sources' position at the top of the hierarchy is reflected in the treating physician rule. *See Gayheart*, 710 F.3d at 375; *see also Rogers*, 486 F.3d at 242. The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with other substantial evidence in [a claimant's] case record."

*Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. §404.1527(c)(2)); *see Gentry*, 741 F.3d at 723. If both conditions do not exist, the ALJ's review must continue:

> When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.

*Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The ALJ began her consideration of the medical source opinions by placing "some weight" on the opinions of two record-reviewing physicians, Dr. Caldwell and Dr.

McCloud, who addressed Plaintiff's physical limitations. (Doc. #5, *PageID* #71). Later in her decision, the ALJ placed "some weight" on the opinion provided by record-reviewing psychologists, Drs. Fernandez and Voyten. *Id*. at 72. The ALJ's decision, however, contains no indication that she evaluated the opinions of these non-treating, record-reviewing medical sources under any of the factors required by the regulations. *See id*. at 71-72. This constituted error. The regulations require ALJs to weigh the opinions of non-treating medical sources "based on the examining relationship, (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. §404.1527(c)). Because ALJ Lombardo found, later in her decision, that controlling weight was not applicable to the opinions of Plaintiff's treating medical sources, *see* Doc. #5, *PageID* #s 71-74, the ALJ erred by crediting the opinions of Drs. Caldwell and McCloud, and psychologists Drs. Fernandez and Voyten, as worthy of some weight, without indicating why. *See id*. Furthermore, the ALJ more rigorously scrutinized the opinions of Plaintiff's treating sources than she did the non-treating sources. This constituted error because "[a] more rigorous scrutiny of the treating source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulations require." *Gayheart*, 710 F.3d at 379 (citing, in part, Social Security Ruling 96-6p, 1996 WL 374180, at *2 (July 2, 1996)). "Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical ... consultant[.]" 20 C.F.R. § 404.1527(e)(2)(ii).

14

The ALJ further erred by not evaluating the opinions of Plaintiff's treating medical sources – especially Dr. Reddy and treating psychologist Dr. Patwa – first under the legal criteria required by the treating physician rule, then under the remaining regulatory factors. There is no indication in the ALJ's decision that she applied the correct legal criteria under the treating physician rule, which is "at the heart of this regulation." *Gayheart*, 710 F,3d at 377. By simply referring to several reasons for placing little weight on the treating sources' opinions, the ALJ skipped over the primary status treating physicians generally have in patient care and under the regulations. The regulations explain to social-security applicants:

> Generally, we give more weight to the opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment[s] and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations....

20 C.F.R. §404.1527(c)(2)[4]; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The ALJ's reasons, moreover, unmoor her decision not only from the criteria applicable under the treating physician rule, but also from the regulation's mandatory requirement to continuing weighing treating-source opinions when the treating physician rule does not apply. The problem here is not that the ALJ failed to refer to the regulatory factors – she did, for example, note that "diagnostic testing did not reveal significant

---

[4] The Social Security Administration has re-lettered 20 C.F.R. §404.1527 without altering the treating physician rule or other legal standards. *See Gentry*, 741 F.3d at 723. The re-lettered version applies to decisions, like the ALJ's, issued on or after April 1, 2012.

lumbar disease." (Doc. #5, *PageID* #72).  The problem is that the ALJ's reasons without reference to, or consideration of, the treating physician rule, failed to indicate that she considered that "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding.  Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 ('In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.')."  *Rogers*, 486 F.3d at 242.  In other words, the ALJ weighed the opinions provided by treating medical sources (Drs. Reddy, Dr. Nwokoru, Dr. Patwa) under the same legal criteria applicable to medical sources holding lower status on the regulation's hierarchy of medical source opinions (Drs. Caldwell, McCloud, Fernandez, and Voyten).  This constituted error.

Next, the ALJ's reliance on the lack of diagnostic testing concerning Plaintiff's lumbar spine, overlooked or ignored the many signs and symptoms Dr. Reddy observed in January 2011.  Dr. Reddy reported that Plaintiff had significantly reduced range of motion in his lumbar spine, in both his hips, and in both his knees.  He had tenderness, crepitus, muscle spasm, and muscle weakness, and antalgic impaired gait – which is noted frequently in Plaintiff's medical records.  (Doc. #5, *PageID* #559).  Dr. Reddy also rated Plaintiff's pain as "severe" and that it would often interfere with his attention and concentration.  *Id*. at 560.  He opined that Plaintiff's "pain and functional limitations are the result of both physical & emotional impairments ...."  *Id*.  There is no indication that the ALJ considered Dr. Reddy's opinion about the combined effects of Plaintiff's physical and emotional

impairment.  This is a significant omission in light of records of Plaintiff's counseling

sessions that repeatedly refer to emotional problems he was experiencing from the trauma

of being struck by a car in June 2006.  By overlooking or ignoring this, and instead

referring to the lack of objective testing to reject Dr. Reddy's opinions, the ALJ erred.  *See*

*Brooks v. Comm'r of Soc. Sec.*, 531 Fed. App'x 636, 641 (6th Cir. 2013) ("Substantiality of

the evidence must be based upon the record taken as a whole.  Substantial evidence is not

simply some evidence, or even a great deal of evidence. Rather, the substantiality of

evidence must take into account whatever in the record fairly detracts from its weight."

(quoting *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984)).  The ALJ also found that

Dr. Reddy's opinion was due little weight because "[o]ther than pain management

[Plaintiff] receives no treatment for any of his alleged impairments."  (Doc. #5, *PageID*

#72).  Substantial evidence does not support this in light of Plaintiff's mental-health-

treatment records, which document Plaintiff's counseling sessions and treatment with

medication prescribed by treating psychiatrist Dr. Patwa.  Again, the ALJ missteps by

overlooking or ignoring Dr. Reddy's opinion that the combination of Plaintiff's mental and

physical impairments as factors contributed to his severe pain.

   Lastly, the ALJ based her decision to place little weight on Dr. Patwa's opinions in

part on assessments of Plaintiff's GAF.  An ALJ's reliance on GAF scores is considered

"on a case-by-case basis."  *Miller v. Comm'r of Soc. Sec.*, __F.3d.__, 2106 WL 362423 at

*7 (6th Cir. Jan. 29, 2016).

    A GAF score is a 'subjective rating of an individual's overall

psychological functioning,' which may assist an ALJ in assessing a claimant's mental RFC. *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir.2007).  GAF scores are 'not raw medical data,' *id*., and 'the Commissioner has declined to endorse the [GAF] score for use in' Social Security benefits programs,  *Lee v. Comm'r of Soc. Sec*., 529 F. App'x 706, 716 (6th Cir. 2013) (quoting *DeBoard v. Comm'r of Soc. Sec*., 211 F. App'x 411 (6th Cir. 2006))....  [A]lthough a GAF score is 'not essential to the RFC's accuracy,' it nevertheless 'may be of considerable help to the ALJ in formulating the RFC.'  *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 241 (6th Cir.2002).

*Miller,* 2016 WL 362423, at *7.  In the present case, the ALJ viewed Plaintiff's GAF

ratings as raw medical data that conflicted with Dr. Patwa's opinions.  This was

problematic because Dr. Patwa's reached his opinions when he was certainly aware of the

GAF ratings in Plaintiff's medical records.  Rather than relying on another medical source

opinion, the ALJ relied on her own lay understanding of this raw medical data to discount

Dr. Patwa's opinions.  Additionally, the fifth and most recent edition of the Diagnostic and

Statistical Manual of Mental Disorders (DSM-5) has dropped the GAF.  "DSM-5 explains

that the GAF was excluded for several reasons, among which were its lack of conceptual

clarity (*i.e.*, including symptoms, suicide risk, and disabilities in its descriptors) and

questionable psychometrics in routine practice."  DSM-5 and the Assessment of

Functioning: The World Health Organization Disability Assessment Schedule 2.0, J. Am

Acad. Psychiatry and Law, 42:2:173-181 (June 2014) (footnote omitted) (available at

http://www.jaapl.org. Search by article title).  Although the GAF scale was in use at the

time of the ALJ's decision, its more recent rejection by the psychiatric professionals who

created it and its lack of direct correlation with the requirements of the Commissioner's

18

mental disorders listings cast too dark a shadow over its use as a reason to reject a treating psychiatrist's opinions.

Accordingly, Plaintiff's challenges to the ALJ's weighing of the medical source opinions are well taken.[5]

## VI.  <u>Remand is Warranted</u>

Remand is warranted when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F3d at 746. Remand for an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff's credibility lacking, *Rogers,* 486 F.3d at 249.

Under sentence 4 of  42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of

---

[5] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of the parties' remaining contentions is unwarranted.

benefits.  *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).  The latter is warranted "only where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking."  *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994) (quoting *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.  Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence 4 of §405(g) due to problems set forth above.  On remand the ALJ should be directed to review Plaintiff's disability claim to determine anew whether he was under a benefits-qualifying disability under the applicable 5-Step sequential evaluation procedure, including, at a minimum, a re-assessment of the medical source opinions and the combined effects of Plaintiff's mental and physical impairments.

**IT IS THEREFORE RECOMMENDED THAT:**

1.  The Commissioner's non-disability finding be vacated;

2.  No finding be made as to whether Plaintiff Michael S. Slaton was under a "disability" within the meaning of the Social Security Act;

3.  This matter be remanded to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

    4.      The case be terminated on the docket of this Court.


February 5, 2016                              _____s/Sharon L. Ovington_____
                                             Sharon L. Ovington
                                             Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).